IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACK BROWN, | : | CIVIL ACTION NO. **1:CV-10-02670** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| EARL REITZ, WARDEN, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On December 30, 2010, Plaintiff, Zack Brown, an inmate at the Cumberland County Prison ("CCP") at Carlisle, Pennsylvania, filed, *pro se*, this civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff attached several exhibits to his Complaint, Exs. A-K. Plaintiff also filed Motions for Leave to Proceed *in forma pauperis*. (Docs. 2 and 6). This Court has jurisdiction over Plaintiff's instant Complaint under 28 U.S.C. §1331 and §1343, and venue is proper since Plaintiff was confined within the Middle District of Pennsylvania and all Defendants are located within this District.[1]

---

[1] Plaintiff Brown filed an almost identical §1983 action in 2004 against CCP Warden Reitz and the prison doctors alleging violations of his Eighth Amendment right to proper medical care, including failure to provide him with a CPAP machine, during his prior incarceration at CCP. *See Brown v. Reitz*, Civil No. 04-0484, M.D. Pa. In his case # 04-484, Plaintiff averred that the prison doctor, Dr. Woods, told him that CCP would not provide a CPAP machine for him and that he would have to provide his own. (Doc. 1, p. 2, ¶ IV., 1.-3.). Plaintiff's case #04-484 was dismissed by the Court on July 7, 2004, due to Plaintiff's failure to prosecute his case.

On November 9, 2010, Plaintiff Brown was re-confined at CCP. Plaintiff again claims that he was denied proper medical care and a CPAP machine at CCP.

**II. Allegations of Complaint.**

Plaintiff's claims are set forth on a typed, 7-page form Complaint. *See* Doc. 1.[2]

Plaintiff names the following four (4) Defendants in his Complaint: Earl Reitz, Warden at CCP;

CCP; Health Services Administrators ("HSA"); and Prime Care Medical, Inc. ("(PCM"). (Doc. 1,

p. 2). The one individual Defendant was employed at CCP during the relevant times of this

case.

Plaintiff alleges that on November 9, 2010, he was at the nursing station at CCP for

intake, seemingly upon his arrival at the prison, and that the following occurred:

> I informed the intake nurse that I did not have my night medication and provided
> her with my list (that I carry with me at all times). She looked over the list and
> said "we do not buy NIASPAN, LIPATOR or SINGULAR and if you need a CPAP
> Machine you need to bring these items in." I was told by Nurse Tory if I didn't

---

[2]Plaintiff's form Complaint incorrectly indicates that this action is in the U.S. District Court for the E.D. PA.

Also, in his form Complaint, the Plaintiff indicates that he utilized the grievance procedure available at CCP with respect to his November 2010 claim that he is being denied his prescribed medications and a CPAP machine, but he seems to state that the grievance process was not completed. (Doc. 1, pp. 4-5). Plaintiff seems to state that he did not receive responses to his appeals of his grievances. Plaintiff's exhibits show that he filed Inmate Requests Forms with prison staff and a Grievance dated November 17, 2010 (Ex. C) complaining about his medical care as well as appeals. (Doc. 1, Exs. B, C, D, E, F, G and I).

Plaintiff must exhaust all of his available administrative remedies prior to filing a civil rights suit. Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Further, Plaintiff is required to exhaust all of his administrative remedies available through the CCP grievance procedure with respect to each of his claims prior to filing an action in federal court. *See Spruill v. Gillis*, 372 F. 3d 218, 222 (3d Cir. 2004); *Dortch v. York County Prison*, 2009 WL 159196, *4 (M.D. Pa.). However, as noted above, exhaustion is an affirmative defense for Defendants to raise. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Dortch*, 2009 WL 159196, *4 .

> want the Zocor that I was to sign the refusal slip. No where in the Inmate
> handbook did I see that an inmate needs to supply there (sic) own medication.

(Doc. 1, p. 3).

Plaintiff avers that "nursing [staff] and prison are refusing prescribed medication that I am currently on. Warden [Defendant Reitz] is not answering request for prescribed medication to be given nor did anyone contact a cardiologist." (*Id*.). Plaintiff indicates that no one else was involved with his claim that he is being denied his prescribed medication and CPAP machine. (*Id*.).

Regarding his alleged injuries, Plaintiff states:

> All of my injuries are internal and I will not know to what extreme they
> are until I see my Cardiac Specialist and they are able to do the necessary
> test on me. The Prison PA [physicians assistant] was advised of all my
> medications and the reasoning for the CPAP machine to MAINTAIN HEALTHY
> Conditions at the prison.
>
> My health problems prior to [being] incarcerated are COPD, Asthma,
> Sleep Apnea, since incarcerations I now have liver/kidney failure as well.

(*Id*.).

As relief, Plaintiff requests:

> Fix this problem so no one else will have to suffer or go through this
> like I've had to while incarcerated. $10,000,000,000.00 I have damage
> to my kidneys, liver, heart, lungs, unable to sleep (without CPAP), my
> legs swelled up, and I also have problems going up and down stairs.

(*Id*., p. 5). [3]

---

[3]Plaintiff does not state if he sues the individual Defendant, Warden Reitz, in his official and/or personal capacities. We note that insofar as Plaintiff seeks monetary damages against this Defendant, he can only sue Reitz in his individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3

Plaintiff's exhibits indicate that he disputes the decision of the prison medical staff to substitute Zocor medication for the medications he was prescribed before his incarceration, namely, Lipitor, Niaspan and Singular. (Doc. 1, Exs. A and B). Plaintiff also states that he is not being given his "sleep study prescribed CPAP machine." Plaintiff was advised by the prison nurse (Nurse Tory) that the prison did not carry Niaspan and Lipitor and, that he would have to supply his own Niaspan and Lipitor if he wanted them. The nurse also stated that Plaintiff was refusing the Zocor the prison doctors prescribed as a substitute for the medications he was prescribed before he was incarcerated.

Plaintiff complained again as follows in his November 15, 2010 (second) Inmate Request Form:

> I written (sic) to your staff about my cardiac prescribed Lipitor, Niaspan, Singular and sleep study prescribed CPAP machine. These meds and machine are very important to my health and other conditions. It can be a matter of life or death for me. Your staff wrote back and said that I refusing Zocor but Zocor was not on my list of meds from my cardiac doctor nor did your staff call him to see if it was OK to change my meds. None of them have a degree in cardiology. Nor was I made appointment to see him [Plaintiff's cardiologist] so that he could tell me he was changing my meds.

(Doc. 1, Ex. B).

---

(M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential). Thus, any claims for monetary damages against Defendant Reitz in his official capacity should be dismissed.

Also, Plaintiff's request for a specific amount of monetary damages (Doc. 1, p. 5) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

On November 15, 2010, a prison medical staff member responded to Plaintiff's second Request and stated, "while you are incarcerated your are under the care of our Dr's. if you supply your meds Lipitor, Niaspan and Singular as well as CPAP machine you may have them while incarcerated." (*Id*.).

Plaintiff filed a Grievance Form on November 17, 2010, and he complained:

> I have written to medical staff about my serious medical conditions and prescribed medications needed for those conditions. Your staff reminded me that while incarcerated I am under the care of prison doctors but your doctor only have M.D. in meds. They specialized in cardiac or sleep study and cannot change my prescribed meds without my doctor - other page.

(Doc. 1, Ex. C).

In response, Plaintiff was advised on November 22, 2010, seemingly by the Deputy Warden-Security, as follows:

> The prison physicians have prescribed what they believe is necessary and appropriate and have given you the opportunity to supply your other meds and CPAP machine. These are your only two options. Thank you.

(*Id*.).

Plaintiff filed an appeal of his November 17, 2010 Grievance Form to Defendant Warden Reitz on November 23, 2010, in which he complained that his medical needs were not being met because the prison doctors, who lacked degrees in sleep study and cardiac care, could not take him off the medications he was prescribed before he went to prison. (*Id*., Exs. D and E).

On November 28, 2010, Plaintiff wrote a letter to Alfred Whitcomb, Cumberland County Controller Chairman, complaining that he was not receiving his correct medications at

CCP, and that he had not received a CPAP machine.  Plaintiff also complained that CCP did not

have a dietitian on staff to ensure he receives a "diabetic/cardiac meal." (*Id*., Ex. I).  Plaintiff also

stated, "I am receiving medical treatment from the hired Medical Staff at the prison, no (sic) of

which is Cardiologist.  I was given an EKG the other day and was not notified of the results."

(*Id*.).

The CCP medical department responded to Plaintiff's November 23, 2010 Grievance

appeal  on November 29, 2010, and stated:

> You have been seen and assessed by the MD and the P.A.  They have deemed
> fit for you to use the meds ordered.  Also, you have been told it is possible for
> you to bring in your own CPAP machine.  As far as diet, the medical department
> does not run food services, neither do they provide a dietician.  The MD is
> aware of diets provided.  Thank you.

(*Id*., Ex. F).

Plaintiff submitted another Request Form on November 30, 2010, and he

complained that the CCP Handbook did not provide that inmates had to supply their own

medications.[4]  Plaintiff stated that there should be no reason why he could not be given his

medications at CCP which were prescribed by "specialty doctors."  (*Id*., Ex. G).

Plaintiff also attaches to his Complaint his summary of his medical complaints, as well

as the extensive care he has received at CCP since he arrived there on November 9, 2010.  (*Id*.,

Ex. C-4).   Plaintiff's summary indicates that Plaintiff has been receiving regular care and regular

prescriptions at CCP despite his claim that he did not receive the medications his doctors

---

[4]Plaintiff attached a copy of 8-page CCP Handbook to his Complaint as an unmarked
exhibit.

prescribed to him before he went to prison and his claim that he did not receive a CPAP machine which was recommended after he had a sleep study.

Thus, Plaintiff raises a claim under the Eighth Amendment for failure to provide him with proper medical care for his physical conditions, namely, COPD, asthma, diabetes and sleep apnea. As stated, Plaintiff alleges that his denial of proper medical care claim arose on November 9, 2010, while he was being processed upon his arrival at CCP in the C Block nursing station.

Plaintiff does not aver that any Defendant acted with deliberate indifference to his serious medical conditions when they failed to provide him with his prescribed medications and CPAP machine.

As mentioned, we construe Plaintiff as raising an Eighth Amendment denial of proper medical care claim. We now screen Plaintiff's pleading as we are obliged to do under the PLRA. *See Mueller v. Centre County*, 2009 WL 4912305.

## III. PLRA.

As stated, the Plaintiff filed two applications to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Docs. 2 & 6). The Prison Litigation Reform Act of 1995,[5] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[6] Specifically, Section 1915(e)(2), which was created by

---

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[6]The Plaintiff filed two applications to proceed *in forma pauperis* with this Court and an authorization to have funds deducted from his prison accounts. The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the

§ 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

## IV. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential

elements: (1) that the conduct complained of was committed by a person acting under color of

state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or

immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451

U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of

Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a

source of substantive rights. Rather, it is a means to redress violations of federal law by state

actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[7] *See also Holocheck v. Luzerne

County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

It is well established that personal liability under section 1983 cannot be imposed

upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423

court from the Plaintiff's prison trust fund account. (Docs. 2, 5, 6 and 7).

[7] Plaintiff alleges in his pleading that Defendant Reitz is an employee of CCP. (Doc. 1, p. 2). This is sufficient to show that this Defendant is a state actor. *See McCarthy v. County of Bucks*, 2008 WL 5187889, * 1, n. 4 (E.D. Pa.).

U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir.

1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of

defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a

complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown,

through the complaint's allegations, to have been personally involved in the events or

occurrences upon which Plaintiff's claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2

(3d Cir. 2009).  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a

viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the

deprivation of a Plaintiff's constitutional rights.") citing *Rode, supra*.

The Court uses the same standard to screen a complaint under the PLRA as it does

for a 12(b)(6) motion to dismiss.  *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.).

**V.  Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, -
> -- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint
> must contain sufficient factual matter, accepted as true to 'state a claim that relief is

plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal

elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Williams v. Hull,* 2009 WL 1586832, *2-*3 (W.D. Pa. 2009).

The Court can consider the exhibits submitted by the parties. The Court in *White v.*

*Probation Office,* 2008 WL 3837045, *1, n. 3 (M.D. Pa.), noted:

> "[t]he court may consider documents of record and exhibits submitted
> by the parties when evaluating a motion to dismiss. *See Tilbury v. Aames
> Home Loan,* 199 F. App'x 122, 125 (3d Cir.2006) (quoting *Oshiver v.
> Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384-85 n. 2
> (3d Cir.1994)) (observing that a court may consider exhibits submitted
> by the parties when ruling on a motion to dismiss)."

*See also Kuniskas v. Walsh*, 2010 WL 1390870, *3 (M.D. Pa.).[8]

**VI. Discussion.**

    *1. Defendants CCP and Prime Care Medical*

    We find that Plaintiff raises no cognizable claim under § 1983 against Defendant CCP

and Defendant Prime Care Medical.  While Plaintiff names  these two (2) Defendants in his

Parties Section of his Complaint, he does not sufficiently state any constitutional claims against

these Defendants under *Monell*.  *See Mueller v. Centre County*, 2009 WL 4912305 (M.D. Pa.).

With respect to his Eighth Amendment claim, Plaintiff simply states that "Nursing and Prison are

refusing prescribed medications that I am currently on."  (Doc. 1, p. 3).  Plaintiff also disputes

the decision of the prison doctors to substitute Zocor for his prescribed medications and the

response of the medical staff that he had to provide his own CPAP machine which was

recommended by a sleep study.

---

[8]See also  *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.).  Thus,
we will consider Plaintiff 's Exhibits attached to his Amended Complaint. (Exhibits  A-
K, Doc. 1).

Plaintiff does not allege that Defendants CCP and Prime Care Medical had policies at CCP to deprive inmates of proper medical care and medications for their serious conditions. In fact, Plaintiff states that the CCP Handbook did not specify that inmates had to supply their own medications. Rather, Plaintiff only avers and his exhibits show that the CCP medical staff advised him that they did not carry Niaspan and Lipitor, and that he would have to supply his own Niaspan, Singular and Lipitor if he did not want to take the medication substituted by the prison doctors, namely, Zocor. Plaintiff also avers that he was advised he had to supply his own CPAP machine which he states was recommended by a sleep study he had performed on him before he was incarcerated.

Additionally, Defendant CCP is not a person under § 1983. *See Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.); *Mueller v. Centre County*, 2009 WL 4912305, *5; *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.)("A county prison does not have the legal capacity to be sued in its own name.").

In *Meyers*, 2006 WL 559467, *9, the Court stated:

> The Schuylkill County Prison is not a "person" within the meaning of Section 1983. *See, e.g., McLeod v. Still,* No. Civ. 05-4635, 2006 WL 372989, at *4 (D.N.J. Feb. 16, 2006) (Monmouth County Correctional Institutional is not a "person" amenable to suit under § 1983) (citing *Fischer v. Cahill,* 474 F.2d 991, 992 (3d Cir.1973) (state prison medical department not a "person" under § 1983); *Marsden v. Fed. BOP,* 856 F.Supp. 832, 836 (S.D.N.Y.1994) (county jail not an entity amenable to suit under § 1983); *Powell v. Cook County Jail,* 814 F.Supp. 757, 758 (N.D.Ill.1993) (Cook County Jail not a "person" under § 1983); *McCoy v. Chesapeake Corr. Center,* 788 F.Supp. 890, 893-94 (E.D.Va.1992) (local jail not a "person" under § 1983); *Brooks v. Pembroke City Jail,* 722 F.Supp. 1294, 1301 (E.D.N.C.1989) (city jail not a "person" amenable to suit under § 1983)). The action will therefore be dismissed as to the Schuylkill County Prison.

Therefore, we will recommend that Defendant CCP be dismissed with prejudice.

Further, as mentioned, Plaintiff has named Prime Care Medical as a Defendant pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978); *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008). Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies." *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9. Since Defendant Prime Care Medical seemingly was contracted to provide medical care to the inmates at CCP, the standards annunciated in *Monell* apply to it. *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.), 639 F.Supp.2d 566 (E.D. Pa. 2009).

As the *Malles* Court stated:

> According to the teaching of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. Because PrimeCare contracted to provide medical care to inmates at the Prison, the same standards apply. *See West,* 487 U.S. at 56, 108 S.Ct. 2250.

*Id*.

We find that Plaintiff has not properly stated a municipal liability claim under *Monell* against Defendant Prime Care Medical with respect to his stated constitutional claim under the Eighth Amendment. Defendant Prime Care Medical cannot be held liable for the conduct of persons it supervises pursuant to *respondeat superior* as Plaintiff clearly attempts to do in this case with respect to his Eighth Amendment claims. *Meyers v. Schuylkill Co. Prison*, 2006 WL

559467, *9.  Rather, "[Defendant  Prime Care Medical is] subject to liability to the extent [it] maintain[s] an unconstitutional custom or policy that caused the alleged constitutional violation."  *Id.* (citation omitted).  As discussed above, no such custom or policy is specifically alleged by Plaintiff with respect to Defendant Prime Care Medical.

> As the *Kokinda* Court stated:

>> A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior*. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018.  Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to "deliberate indifference . . . [to the constitutional rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional'' injury." *Id.* at 325 (citations omitted).

>> To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. May view State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Plaintiff does not make any allegations as described above against Defendant Prime Care Medical necessary to make it subject to  municipality liability in a  § 1983 action.  Plaintiff does not allege any causal nexus between an identifiable policy and his alleged constitutional

14

injuries. We find that Plaintiff has not sufficiently stated a claim under *Monell* against Defendant Prime Care Medical with respect to his Eighth Amendment claims. Based on *Kokinda, Meyers*, and *Malles*, as well as *Mueller v. Centre County*, 2009 WL 4912305, we find Plaintiff's allegations do not sufficiently state that Defendant Prime Care Medical caused any alleged conduct of the individual Defendant by having customs, policies, practices and procedures, and how these policies gave rise to the constitutional violations alleged in the Complaint.

In light of Plaintiff's numerous exhibits we also find futility of allowing Plaintiff to amend his claims as against Defendant Prime Care Medical. *See Merring v. Correctional Care, Inc.*, 2010 WL 1485893, *3 (M.D. Pa. 4-12-10)(citations omitted).

Therefore, we will recommend that Defendant Prime Care Medical be dismissed with prejudice.

### 2. *No Personal Involvement of Defendant Reitz and unnamed HSA*

As mentioned, with respect to the medical care Plaintiff has been receiving on a regular basis at CCP since his recent arrival on November 9, 2010, we find that Plaintiff fails to state the personal involvement of Defendant Reitz and Defendant unnamed HSA with respect to his Eighth Amendment denial of proper medical care claim. Also, Plaintiff cannot name Warden Reitz as a Defendant based on his appeal to the Warden of the denial of his November 17, 2010 Grievance.

As stated, liability may only be based upon the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton, supra.* It cannot be premised on the doctrine of *respondeat superior. Id.; Rizzo, supra.* "Instead, there must be acquiescence or

15

participation in the violation before liability attaches under section 1983." *Rizzo,* 423 U.S. at 377. In this case, there is no personal involvement of Defendant Warden Reitz alleged. Plaintiff appears to have named this Defendant since he is the CCP Warden, and since he submitted an appeal of his Grievance to the Warden and the Warden had the medical staff respond to it. (Doc. 1, Exs. D, E and F). This is clearly insufficient in a §1983 action. *See Newton v. Reitz*, 2009 WL 233911 (M.D. Pa. 1-30-09)("although it is apparent that [Defendant ] Smith was personally involved in responding to Plaintiff's grievances, participation in the after-the-fact review of a grievance is not enough to establish personal involvement." citing *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006).

Plaintiff does not allege that Defendant Reitz, a non-physician Defendant, as head of CCP, failed to act to provide him with a CPAP machine despite the knowledge of a substantial risk of serious harm to Plaintiff. Plaintiff does not claim that Defendant Reitz was even aware that he [Plaintiff] was not given the requested machine recommended by a sleep study, and that Reitz failed to do his job and correct the situation. Defendant fails to allege that Defendant Reitz was aware that the prison doctors substituted his medications with Zocor and that Reitz knew that this substitution presented a substantial risk to his health. Further, the Plaintiff has failed to state a viable claim against Defendant Reitz, since he was not a physician and there is no claim that he was directly involved with Plaintiff's medical treatment. *See Newton v. Reitz*, 2009 WL 233911. In fact, Plaintiff's own exhibits show that he received regular care by the prison medical staff since his recent confinement at CCP on November 9, 2010.

Any claim that Defendant Reitz was deliberately indifferent to the Plaintiff's serious medical needs must fail. Defendant Reitz, a non-physician, cannot be found deliberately indifferent to the Plaintiff's serious medical needs, as the Plaintiff acknowledges and as his exhibits show that he was under the care of the prison physicians and medical staff, including the PA's and nurses, and that he made them aware of his conditions. *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993). *See also Thomas v. Zinkel,* 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (Citing *Durmer*, 991 F. 2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911("the United states Court of appeals for the Third Circuit held in *Durmer* that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.")(Citing *Durmer*, 991 F. 2d at 69); *Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07).

Nor does Plaintiff allege, as stated, that Defendant Reitz deliberately failed to provide him with his prescribed medications and the recommended machine. Plaintiff's allegations amount to a claim that Defendant Reitz, as supervisor of the prison, should have known that ths prison doctors could not substitute Zocor for the medications he was prescribed prior to his incarceration. As stated above, liability in a § 1983 case may only be based on the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton, supra; Newton v. Reitz*, 2009 WL 233911. Plaintiff is well aware from his prior action with this Court

17

of the personal involvement requirement of a Defendant named in a § 1983 action. *See Brown v. Reitz*, Civil No. 04-484. *See also Mueller v. Centre County*, 2009 WL 4912305 (M.D. Pa.). There is no claim that Defendant Reitz had any direct involvement in Plaintiff's medical care. Plaintiff cannot hold Defendant Reitz liable on the basis of *respondeat superior* as he tries to do in this case. *Id*. Therefore, we shall recommend that Defendant Reitz be dismissed for lack of personal involvement, especially in light of *Iqbal*. *See Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

We also find no cognizable Eighth Amendment denial of proper medical care claim is stated as against Warden Reitz and HSA. In fact, in Plaintiff's prior case, Civil No. 04-484, the Court dismissed Warden Reitz due to Plaintiff's failure to state a cognizable Eighth Amendment denial of proper medical care claim against him based on essentially the same allegations that Plaintiff now raises against Reitz in the present action.

Plaintiff asserts an Eighth Amendment denial of proper medical care claim against Defendants Reitz and HSA with respect to his allegations that after his confinement at CCP on November 9, 2010, he was denied his prescribed medications by prison doctors who were not cardiology specialists and that he was denied his request for a CPAP machine which was recommended by a sleep study, seemingly for his apnea.[9] Plaintiff also alleges that the prison doctors improperly prescribed Zocor and substituted it in place of the medications his doctors prescribed before his November 2010 incarceration at CCP. As discussed above, Plaintiff has

---

[9]Plaintiff does not state if he had a CPAP machine and used one prior to his November 2010 incarceration at CCP. However, as noted above, Plaintiff did not have a CPAP machine at the time of his previous 2004 confinement at CCP.

not sufficiently specified how these two Defendants were personally involved with his Eighth Amendment denial of proper medical care claim. We also find that Plaintiff has not alleged conduct by the stated two Defendants which amounts to an Eighth Amendment claim. Also, Plaintiff's exhibits clearly show that he was being treated regularly for his conditions by the prison medical staff including, the nurses, the PA's and the doctors. Plaintiff's allegations amount to only disputes with the treatment which was admittedly being provided Plaintiff by the prison medical staff.

In *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.), the Court stated that:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious

medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191, 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

Applying these principles to the above detailed allegations Plaintiff asserts against the stated Defendants, and in review of Plaintiff's exhibits, we find that no viable Eighth Amendment claim is stated against Reitz and HSA. Plaintiff avers that the prison doctors improperly substituted Zocor for his prescribed medications for his heart and diabetes conditions. Plaintiff admits that he received medical care for his conditions at CCP and his exhibits demonstrate this. Plaintiff merely alleges he was given the wrong medications and that he was not given a CPAP machine recommended after he had a sleep study performed. Plaintiff is only disputing the adequacy of the medical care he undisputedly was receiving at CCP. This does not amount to an Eighth Amendment claim. *See Newton v. Reitz,* 2009 WL 233911.

In *Mimms v. U.N.I.C.O.R.,* 2010 WL 2747470, *2 (3d Cir.), the Court stated:

In order to state a claim under the Eighth Amendment for denial of medical care, Mimms must show that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer,* 511 U.S. at 834-35 Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104-05. Mimms stated that he broke his left hand at Lewisburg camp. He was given an x-ray and was treated with a splint and medication for pain. He stated that he continued to experience pain and numbness and did not have any follow-up treatment. The District Court properly dismissed this

20

claim because Mimms failed to clarify which defendant he faults for these events. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Furthermore, he did not satisfy the standard for deliberate indifference. According to Mimms' own allegations, he received immediate medical care, and he did not specify what treatment, if any, he was denied. Although he claimed that he experienced continuing pain, the District Court properly noted that he did not allege that the pain was severe or that he informed prison officials about the pain and was denied treatment.

Moreover, we find that at most Plaintiff's allegations amount to only negligence. As stated, Plaintiff only alleges these the prison medical staff prescribed the wrong medication (Zocor) for his conditions and that they were not competent to substitute this drug for his prescribed medications. Plaintiff also alleges that the medical staff would not provide him with a CPAP machine, which he states was recommended by a sleep study.

As the Court stated in *Robinson v. U.S.,* 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment ] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County,* 912 F.Supp. 809, 815 (M.D.Pa.1996) (citing *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979), quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)). When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria,* 709 F.Supp. 542, 547 (M.D.Pa.1988).
> Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean,* 897 F.2d 103, 108-10 (3d Cir.1990).

Thus, based on *Mimms* and *Robinson*, we will recommend that Defendants Reitz and HSA be dismissed from this action.

## VII. Recommendation.

Based on the above, it is respectfully recommended that Defendant CCP be dismissed with prejudice. It is also recommended that Defendant Prime Care Medical be dismissed with prejudice. Further, it is recommended that Plaintiff's Eighth Amendment denial of proper medical care claims be dismissed as against Defendants Reitz and HSA with prejudice.[10] Finally, we recommend that Plaintiff's *in forma pauperis* motions (Docs. 2 and 6) be granted solely for the purpose of filing this action.


                                        s/ Thmas M. Blewitt
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: January 31 , 2011**

---

[10]Pursuant to our above discussion, we find futility of any amendment of Plaintiff's claims against all four Defendants, and we shall not recommend Plaintiff be granted leave to amend his pleading with respect to these claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. Pa.).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZACK BROWN, | : | CIVIL ACTION NO. **1:CV-10-02670** |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| EARL REITZ, WARDEN, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 31, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                           **s/ Thomas M. Blewitt**
_____  **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**

**Dated: January 31, 2011**